ALBERT F. KEENEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21916. Promulgated September 26, 1929.

*Paul E. Shorb, Esq.,* and *Marion P. Wormhoudt, Esq.,* for the petitioner.

*Byron M. Coon, Esq.,* for the respondent.

OPINION.

LOVE: The issue here arises in the contention of the respondent that the petitioner was a real estate "dealer"; that these four properties were a part of his "stock in trade" of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year. The petitioner contends, to the contrary, that he was and is a real estate "broker" and that as such he has no inventory; and that even though he were a real estate "dealer," these properties would not constitute a stock in trade of a kind which would properly be included in his inventory if on hand at the close of the taxable year. If the petitioner is correct, these properties which at the time of their sale in 1923 had been held for a much longer period than the two years provided in the Revenue Act of 1921, were capital assets and any gain de-

rived from their exchange or sale is taxable as a capital gain at 12½ per cent, if the taxpayer so elects.

That Act provides:

SEC. 206. (a) That for the purpose of this title:

(1) The term "capital gain" means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;

(2) The term "capital loss" means deductible loss resulting from the sale or exchange of capital assets consummated after December 31, 1921;

(3) The term "capital deductions" means such deductions as are allowed under this title for the purpose of computing net income and are properly allocable to or chargeable against items of capital gain as defined in this section;

(4) The term "capital net gain" means the excess of the total amount of capital gain over the sum of the capital deductions and capital losses;

(5) The term "ordinary net income" means the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions, and

(6) The term "capital assets" as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but does not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.

(b) In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected and paid, in lieu of the taxes imposed by sections 210 and 211 of this title, a tax determined as follows:

A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 210 and 211, and the total tax shall be this amount plus 12½ per centum of the capital net gain; but if the taxpayer elects to be taxed under this section the total tax shall in no such case be less than 12½ per centum of the total net income. The total tax thus determined shall be computed, collected and paid in the same manner, at the same time and subject to the same provisions of law, including penalties, as other taxes under this title.

The petitioner and the respondent each lays stress on the difference between a "broker" and "dealer" in real estate, the respondent especially contending that upon that difference depends the answer to the question whether or not the method of accounting regularly employed in keeping the books of the taxpayer was such as clearly to reflect the income of the taxpayer. Both seem to agree that if in 1923 the petitioner was a real estate broker, the use of an inventory of the real estate that he was handling for others was neither necessary nor permissible, and in that obvious mutual agreement the Board concurs. The petitioner goes further and contends that even though he was a dealer in that year, the particular parcels of real estate in controversy were a capital asset, and that in any case, the use of an inventory of that or any other real estate that he owned

was neither necessary nor permissible in order clearly to reflect his net income either in accordance with the method of accounting regularly employed in keeping his books, or as conforming as nearly as may be to the best accounting practice in his trade or business. The respondent contends that the petitioner was a real estate dealer in 1923; that in the opinion of the Commissioner the use of an inventory of his " stock in trade " was necessary in order clearly to determine his income; that *all* the real estate owned by him was his " stock in trade " and that that part of it on hand at the close of each of his taxable years should therefore be inventoried and taken into his accounts in determining his taxable income, thereby debarring him from the election provided in the case of capital net gains by section 206 (b) of the Revenue Act of 1921.

We do not believe that any fine distinction need be drawn here as between " dealer " and " broker," for it is our opinion that the petitioner by his own showing was in 1923 clearly both. His amended tax return for that year holds him out to be engaged in the " real estate " business, which of course would be equally true whether he were a dealer or broker. But on that return his gross income is shown to have been derived from—

| | Amount | Per cent |
|---|---|---|
| Commission, line 1 | $20,052.53 | 30 |
| Interest on deposits, etc., line 3 | 26,815.91 | 40 |
| Rents, line 5 | 3,563.63 | 5 |
| Profits from sale of real estate, line 6 | 13,760.55 | 20 |
| Miscellaneous sources, lines 7 and 8 | 3,339.04 | 5 |
| Total | 67,531.66 | 100 |

The percentages shown above are sufficiently exact to support our opinion that a taxpayer, an approximate quarter of whose gross income is derived from rents and profits from sale of real estate, can hardly seriously maintain that he was not a dealer as well as a broker in real estate.

As a broker, the petitioner and the respondent are in agreement that it would not be proper for the purpose of determining net income to include in the accounts of the petitioner an inventory of property in which he holds no title, and we have above declared our concurrence in that agreement. As a dealer, we have heretofore decided, in *Atlantic Coast Realty Co.*, 11 B. T. A. 416, that in the business of buying and selling lands, a taxpayer's income is not to be determined by the use of inventories where the Commissioner has by regulation ruled generally that such inventories are not required and the proof does not indicate that such use is in conformity with the best accounting practice, but tends rather to show

such use to be impractical. In our discussion of the circumstances of that case, we quoted the Bureau's Office Decision 848, published in 1921 in Cumulative Bulletin No. 4, page 47, to the effect that "a taxpayer engaged in the real estate business *is not permitted* [our italics] to inventory real estate which is held for sale for the purpose of calculating net income subject to Federal income tax." That case was distinguished from this under consideration here by the facts that the Revenue Act of 1918 controlled and that the petitioner (a corporation) was endeavoring to establish its right to use inventories, which right the Commissioner contested; but the provision concerning the use of inventories in section 203 of the Revenue Act of 1921 repeats verbatim the provision of the same section of the 1918 Act. There is no difference in regard to this provision as between an individual and a corporation; and the fact that in *Atlantic Coast Realty Co., supra,* we sustained the Commissioner in the very contention that this petitioner is now advancing gives our decision there even stronger force, if possible, in its present application. "Inventory" is a word that in its broadest sense is of wide application. Even a balance sheet including all the assets and liabilities of an individual or corporation might be held to be an inventory; but as we believed when we decided the above case, so we believe now, that under the provisions of the Revenue Act of 1918 (and of 1921) "the use of inventories must be reasonably necessary to the determination of income. The language (of the Act) indicates no intention to recognize in any trade a new method of determining income or a new limitation upon income, but only a recognition of the use of inventories in such trades or businesses, like 'manufacturing and merchandise concerns,' as had been found to require such accounting practice. Nowhere have we been able to find a reference to such an accounting practice in the business of buying and selling lands." Counsel for the respondent quotes Kester to the contrary; but the unsupported opinion of one man, even though he were an admitted authority, does not establish an "accounting practice."

In referring in his opening statement to Office Decision 848, quoted *supra,* counsel for the respondent said: "It is true that the office at that time apparently had that slant on it (i. e., that such property could *not* properly be included in the taxpayer's inventory), but later it reversed its views, as I presume it had the right to do, and has since maintained the position we hope to maintain in this case." In other words, that the Commissioner had changed his mind, as undoubtedly he had the right to do. But the conclusion of the Board was reached independently through its own interpretation of the provisions and intent of the law, and it is not affected in any degree by a change of mind on the part of the Commissioner, for, notwithstanding, the law remains the same.

The provision in section 208 (a) (8) barring from inclusion among capital assets "property held by the taxpayer primarily for sale in the course of his trade or business" is not asserted by the respondent as declarative of the purpose of section 206 (a) (6) of the Revenue Act of 1921. On the authority of the former General Counsel for the Bureau of Internal Revenue he admits that it constitutes a "change" in the provisions of the law; but he argues that the addition of that provision in the 1924 Act "to make it clear that real property held primarily for sale" in the course of the taxpayer's trade or business should thereafter be considered "stock in trade" and not "capital assets," does not warrant the inference or conclusion that property similarly held while the 1921 Revenue Act was in effect, was not "stock in trade" subject to inventory. Without expressing any opinion in regard to that conclusion of the respondent's counsel, it is only necessary to say here that we are not now concerned with the provisions of the Act of 1924 except as they may be held to be declaratory of the purposes and intent of the earlier Act, which it is not asserted is the case here and which we do not believe to be the fact. Following our reasoning in *Atlantic Coast Realty Co.*, *supra*, we hold that none of the real property owned by the petitioner in his business as a dealer in real estate and on hand at the close of his taxable year 1923, or at any earlier date, could properly have been included in his inventory.

In considering whether the four parcels primarily at issue were capital assets or stock in trade, we recall that all these purchases were made in 1912, 1913, and 1914, and held for a much longer period than two years; all that have been disposed of having been sold in 1923.

In 1911 the petitioner retired from active politics which, so far as it appears, had previously been his only vocation, and entered the real estate office of a friend where, while he was "waiting for some other kind of a job," he tried, not very successfully, to sell real estate on commisison. He was so occupied until 1913, when he became active vice president of a savings bank, which position he held until September, 1915. It was in this period during which it is certain that he was *not* a "dealer" in real estate, that he acquired all of these four parcels, the greater part of which was later disposed of so advantageously. He made his purchases without any well defined idea of what he was going to do with the property. He bought farm acreage and, if he had any plan at all, it was with the expectation of disposing of it as acreage when its value had increased through the normal growth of the city. It was not purchased in connection with "his business" for he had no business of that kind at that time, being occupied in a small way in selling

real estate for others, and, after he had abandoned that, as vice president of the savings bank. Naturally, his purchase was made " for profit," which he hoped to achieve in some way not at all clear to him at the time that the purchases were made; but it was not his purpose to, nor did he, sell the property for any price that he could get above its cost to him. He intended to hold it, and did hold it, until, in 1923, he was able to dispose of it at a price that justified his faith in the growth of Chicago at the time the purchase was made, and the soundness of his judgment in regard to the direction in which the city would expand. Such a transaction was not a " speculation " except as every business venture where the outcome is uncertain is a speculation. In our opinion, it was a transaction in property not connected with his trade or business, " acquired and held by the taxpayer for profit or investment " long before the provisions of the Revenue Act of 1921 were enacted into law, of the exact kind in the contemplation of section 206 of that Act that recognized " capital gain " as distinguished from " ordinary net income "; and provided for the taxation of such gains upon a different basis at the election of the taxpayer.

Reviewing the foregoing facts and discussion, we conclude:

That the petitioner in 1912, 1913, and 1914, when these purchases here in question were made, was not a dealer in real estate and that the purchases were not made in connection with his trade or business;

That the purchases were made for profit or investment and that the petitioner held said property for more than two years from the date of purchase until its sale after December 31, 1921;

That the said property was not held by the petitioner for his personal use or consumption or that of his family;

That such property formed no part of the petitioner's stock in trade or other property of a kind which would properly be included in the inventory of the petitioner if on hand at the close of the taxable year;

That the property constituted a capital asset from which a capital net gain was derived in the sale consummated after December 31, 1921; and that

Pursuant to the privilege granted to him by law, this petitioner has elected that the tax upon such capital net gain shall be levied at 12½ per centum thereof under the provisions of section 206 (b) of the Revenue Act of 1921, and so collected and paid; and the petitioner still maintains and asserts that election.

And we hold accordingly. The tax will be recomputed in accordance with the stipulation and this decision.

*Judgment will be entered for the petitioner under Rule 50.*