CLINTON GILBERT, JR., EXECUTOR, ESTATE OF CLINTON GILBERT, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21416.   Promulgated September 11, 1930.

*Henry Mannix, Esq.*, for the petitioner.

*Frederick K. Slanker, Esq.*, and *R. W. Wilson, Esq.*, for the respondent.

OPINION.

Morris: "Capital assets" are defined by the Revenue Act of 1921 as follows:

Sec. 206. (a) That for the purpose of this title:

\* \* \* \* \* \* \*

(6) The term "capital assets" as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but does not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.

and by the Revenue Act of 1924 as:

Sec. 208. (a) For the purposes of this title—

\* \* \* \* \* \* \*

(8) The term "capital assets" means the property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

Under the 1921 Act property had to be " *acquired and held* by the taxpayer for investment or profit for more than two years (whether or not connected with his trade or business)," but under the 1924 Act the property merely had to be "held by the taxpayer for more than two years," without mention of whether it was held for investment or profit, before such property could be considered "capital assets." After having specifically provided that property held for two years would be considered capital assets, both Acts expressly excluded property which would properly be included in a

taxpayer's inventory if on hand at the close of the year. In addition, the 1921 Act excluded property held for the personal use or consumption of taxpayer or his family, while the 1924 Act excluded "property held * * * primarily for sale in the course of his trade or business."

The petitioner contends that a dealer in securities may hold securities for investment purposes, and be entitled to the benefits of the capital gain provisions with respect to profits from such investments; that the stocks here in question were held as investments and not primarily for sale in the course of business; and that such stocks were held more than two years prior to the sale thereof. No contention is made by petitioner that decedent was not a dealer in securities, but it is contended that he was not a dealer with respect to the stocks here in controversy.

Respondent relies almost entirely upon the entries in decedent's books of account, and the attempts by decedent to specialize in oil stocks, to show that decedent was a dealer with respect to the oil stocks sold in 1922 and 1924. In this connection it must be borne in mind that book entries are evidence of the facts which they contain only to the extent that they set forth the true state of affairs. *Chatham & Phenix National Bank*, 1 B. T. A. 460; *Corn Exchange Bank*, 6 B. T. A. 158. Therefore, if the actual facts prove that the decedent purchased and held the stocks in question for investment purposes, and that such stocks were really capital assets, then the petitioner is entitled to the benefits of sections 206 and 208 of the respective Acts.

An examination of decedent's books of account, together with the testimony of record, indicates that he made no attempt to segregate personal accounts from his business accounts prior to February, 1924, at which time numerous accounts were closed out and transferred by journal entry to Clinton Gilbert, Investment Account. It further appears that club dues, personal expenses, real estate transactions, and personal investments were entered in decedent's books, together with his business transactions, and that all accounts on his books were treated and handled the same whether of a personal or business nature. In this situation we are of the opinion that any inference, based entirely upon the books, as to what constituted transactions in the course of decedent's trade or business and what constituted his personal investments, would be unjustifiable.

Petitioner produced three witnesses who testified that they could take decedent's books of account and identify his personal investments. These witnesses were a bookkeeper, the manager of decedent's office for many years, and decedent's son, who succeeded the office manager. Each of these witnesses asserted positively that

during the period when they were familiar with the business, the stocks sold in 1922 and 1924 were a part of decedent's personal investments, were never considered a part of his stock in trade, and that these stocks were not regularly dealt in by decedent in the course of his trade or business. Each witness admitted that decedent executed some orders to buy or sell specific stocks that were given to him by customers, but each denied that he bought and sold oil stocks in the regular course of his business.

In addition to the above witnesses, petitioner produced three dealers in securities who testified that they knew decedent as a specialist in bank, trust, insurance and title stocks, but had never heard decedent referred to as a specialist or dealer in oil stocks except during the period 1917 to 1920. Witness Hughes testified that he had had quite a large number of transactions in oil stocks with decedent during the period 1917 to 1920, and he had presumed that they were for his business, but that later he was informed that such purchases were for decedent's own account. But neither Hughes nor the other two witnesses ever heard of decedent as a dealer in oil stocks except as just stated.

Petitioner further showed to our satisfaction that whatever attempts decedent made to become a dealer in oil stocks were abandoned prior to 1920, and that thereafter his trading was confined to the class of stocks in which he specialized. It was shown that his advertisements after 1920 made no mention of oil stocks for sale or that he sought transactions in oil stocks. It was further shown that for a number of years prior to August, 1922, decedent's office manager had participated in profits from the business transactions, that after August, 1922, the manager was placed on a salary, and decedent's son participated, but that neither of them received a percentage of the profits from decedent's sales of stock here in question, and that each of them considered such profits resulted from the decedent's personal investments.

Comparison of the various oil accounts here involved with such accounts as Mechanics & Metals National Bank, Manhattan Co. (Bank) and New York Title & Mortgage Co., stocks in which decedent specialized, shows that the oil stocks were comparatively inactive in view of the many transactions shown in the three accounts last mentioned, which were admittedly trading accounts. Most of the entries showing transactions in oil stocks were made prior to or during 1920, and practically all transactions occurring thereafter were identified by decedent's office manager or his son. Their testimony shows that almost without exception these few entries related to specific orders from customers, relatives or friends of the

decedent to buy oil stocks for them, or were transactions for decedent's personal account.

In our opinion it can not be successfully contended that transactions by decedent on specific orders for oil stocks made him a trader as to the stocks under consideration. It would seem to be just as logical to hold him a real estate dealer because he was involved in several real estate transactions. Our attention has been directed to no place in the record where it appears that decedent traded in oil stocks in the course of his trade or business subsequent to 1920, or that he held such stocks primarily for sale in the course thereof. Abundant testimony is of record to show that decedent traded in only bank, trust, insurance, and title company stocks after 1920, except in isolated transactions where he had specific orders to buy or sell for customers.

On brief the respondent admitted that a single sale or transaction in any commodity was insufficient to constitute one a "dealer" within the general meaning of that term, but he contends these accounts "were active up to and including 1924." We are unable to agree that these accounts "were active" as contended for, where the evidence shows that the transactions were few and scattered and that many of the entries therein related to specific orders. Considering all the facts peculiar to this proceeding, we are of the opinion that, while decedent was no doubt a dealer with respect to bank and trust company stock, and probably was a dealer with respect to oil stocks prior to 1920, during the years in question his oil stocks were no part of his stock in trade, were not properly includable in any inventory that might have been taken, and were not held primarily for sale in the course of his trade or business. Cf. *Franklin Q. Brown*, 9 B. T. A. 965; *Clinton Graham*, 1 B. T. A. 775; *Albert F. Keeney*, 17 B. T. A. 560; *William Kempton Johnson*, 17 B. T. A. 611.

An examination of the New York Mutual Gas Light Co. account discloses that decedent had one purchase and one sale in this account other than the transactions which resulted in the profit here in question. It appears that this stock was held for more than two years and in view of all the facts in this case we are of the opinion that petitioner has supported the burden of proof and is entitled to have any profit resulting from the sale thereof in 1922 computed under section 206 of the Revenue Act of 1921.

The Independent Warehouse account shows that the twelve shares sold in 1924 were acquired in 1919 and 1920. Thereafter the account shows two entries indicating purchases or sales on specific order. We are satisfied that this stock constituted a portion of decedent's personal investments and falls within the definition of "capital assets" set forth in section 208 of the 1924 Act.

*Decision will be entered under Rule 50.*