*1258 OPINION.
Marquette :
The petitioners seek to have so much of their income as was derived from the sale of the lands belonging to the syndicate taxed under the provisions of section 208 of the Revenue Act of 1926 and section 101 of the Revenue Act of 1928. The only issue is whether these lands constituted “ capital assets ” within the meaning of these sections. By section 208 (a) (8) of the Revenue Act of 1926, it is provided:
The term “ capital assets ” means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or businéss. * * *
Section 101 (c) (8) of the Revenue Act of 1928 is not materially different from the provision quoted above. It is conceded that with the exceptions set forth in our findings the lands had been held during the years in question by the taxpayers for more than two years. Real estate may not be included in inventory. Atlantic Coast Realty Co., 11 B.T.A. 416; Albert F. Keeney, 17 B.T.A. 560; E. H. Hay, 25 B.T.A. 96.
*1259 Whatever may have been the intention of the parties in 1919, it is clear that these lands were held during the period 1925 to 1928, inclusive, primarily for sale. They produced no rental income. It is not claimed that the owners ever intended to erect improvements on the land for rental purposes. The intention to sell is clearly indicated by the declaration of trust of Miller of December 1, 1919, and by the agreement of December 20, 1920. As early as August 1922, a part of the property had been subdivided. In subsequent years four additional blocks were subdivided. In this way the syndicate owned first and last 1,498 lots which they held for sale and no other purpose.
The one remaining question is whether these properties were held by each of the petitioners for sale “ in the course of his trade or business.” We may eliminate the word “ trade ”, since if a profession may be termed a trade, both petitioners were engineers. Whittled down, the issue is whether the activities of the petitioners set forth in our findings amounted to carrying on a business. In Flint v. Stone Tracy Co., 220 U.S. 107, the Court said:
“ Business ” is a very comprehensive term and embraces everything about which a person can be employed. Black’s Law Diet. 158, citing People ex rel. Hoyt v. Tax Comrs., 28 N. V. 242, 244. “ That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.” 1 Bouvier’s Law Dict. p. 273.
On the other hand, isolated transactions do not constitute the carrying on of a trade or business. Mente v. Eisner, 266 Fed. 161; Bedell v. Commissioner, 30 Fed. (2d) 622; Washburn v. Commissioner, 51 Fed. (2d) 949. It is often difficult to apply the general definitions, with the result that “ the decision in each instance must depend upon the particular facts before the court.” Von Baumbach v. Sargent Land Co., 242 U.S. 503.
In the case before us we have not isolated transactions, but continuity of effort. Two tracts were purchased in 1919, one in 1920, and one in 1923. The tracts were laid out in lots in August 1922 (before the last tract was purchased), May 1924, December 1924, June 1926, and April 1927. In the period 1923-1928, inclusive, 891 lots and 5 larger tracts were sold. All of this required time, attention and labor, and the purpose was gain. These transactions, taken as a whole, in our opinion constituted a business. The fact that no property was purchased during the years before us does not militate against this conclusion, since a business may consist of only the sale of assets acquired in previous years. John D. Roney, 26 B. T. A. 1213. Since these transactions constituted a business, the question is, Whose business was it? The properties purchased and sold belonged to the individual members of the syndicate, among whom *1260 were the petitioners. The Essex Co. held the bare legal title. Every act done by Miller or by the Essex Co. was authorized by these members. They conferred on that company the authority under which it acted; and all this “For greater convenience in dealing with said lands and rights * * In other words, the members of the syndicate, of whom the Essex Co. was one, operated through their chosen representative. It is axiomatic that one may confide the management of his business to another; but it still remains the business of the owner.
At this point the petitioners call attention to the fact that the appointment of the Essex Co. is irrevocable. It does not lie in the mouths of the petitioners to advance this contention. They, together with Miller, held the important executive offices of the company and they with Miller constituted a majority of its board of directors. Thus they, and the syndicate through them, were in absolute control of their agent.
We conclude that the petitioners held the properties in question primarily for sale in the course of their business. The petitioners rely on Phipps v. Commissioner, 54 Fed. (2d) 469. We do not think that case is controlling. The facts there differ materially from those presented in these proceedings. Cf. Von Baumbach v. Sargent Land Co., supra.

Judgment will be entered for the respondént.