LOUGHBOROUGH DEVELOPMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51064. Promulgated October 12, 1933.

*W. A. Bolinger, Esq.*, and *Cecil J. Dowd, Esq.*, for the petitioner.
*E. L. Corbin, Esq.*, for the respondent.

OPINION.

SEAWELL: The Commissioner determined a deficiency in income tax for the year 1927 in the amount of $9,173.54. The only question in issue is whether the facts connected with an exchange of real estate made by the petitioner during the year 1927 for other real estate, plus cash of $53,786.90, were such that under the provisions of section 203 (b) (1) and (d) (1) of the Revenue Act of 1926 the petitioner realized no taxable income therefrom in excess of the cash received.

The testimony of the president of the petitioner and a stipulation signed by counsel of the respective parties show the facts connected with the aforementioned transaction and are in substance as hereinafter stated.

The petitioner is a Delaware corporation, organized in 1923, with its principal office and place of business in Washington, D.C. Its charter gives it the power to operate generally in the real estate business, but it has not in its regular course of business bought and sold real estate with a view to quick profits. It handles no rents, does no commission business, no loan business and, strictly speaking, no purely speculative business in real estate.

On varying dates, but principally in 1925, the petitioner acquired certain real estate lying south of Massachusetts Avenue in the District of Columbia. On March 11, 1927, the petitioner exchanged a part of this real estate with the W. C. and A. N. Miller Development Co. for $53,786.90 cash and certain other real estate located in the vicinity of Twenty-second Street and Pennsylvania Avenue, NW., District of Columbia, which other real estate at the time of the exchange had a fair market value that was $75,000 in excess of the sum of the total cost of the property exchanged by petitioner and the $53,786.90 cash it received in the exchange. In its 1927 return the petitioner included as taxable profit from the exchange the total cash received in the amount of $53,786.90, but included nothing more, on the theory that the exchange was of a kind contemplated by section 203 (b) (1) and (d) (1), *supra*. In the deficiency notice for 1927 the Commissioner denied that the exchange was of a kind contemplated by that section and added to petitioner's taxable income for that year the amount of $71,268.05, making a total taxable profit from the exchange of $53,786.90, plus $71,268.05, or $125,054.95.

It is further stipulated that if petitioner's assumption that the exchange of properties was of the kind contemplated by the provisions of the section of the 1926 Revenue Act mentioned and relied on, then no part of the $71,268.05 added by the Commissioner should be included in petitioner's income for 1927, and, on the other hand, if the petitioner was not correct in its assumption, then the full amount of $75,000 should be added to its taxable income for the year 1927. The petitioner held the real estate located at Twenty-second Street and Pennsylvania Avenue from the date of its acquisition in 1927 until the year 1931, during which year it disposed of same, part for cash and part for other property.

It is contended for the petitioner that the real estate involved in exchange, that given up and that received, was acquired solely for investment and that in the transaction there resulted no taxable income in excess of the cash amount of $53,786.90.

The respondent insists that, as petitioner was in the real estate business, it was a dealer in such and real estate was, therefore, its stock in trade and that stock in trade is specifically excepted from the provisions of section 203 (b) (1) of the Revenue Act of 1926. It is further argued in behalf of the respondent that the real estate here

involved and exchanged constituted " property held primarily for sale," and hence was excepted from the provisions of that section.

The testimony of the president of petitioner throws much light upon the subject. The record shows that Allan E. Walker, father of Albert W. Walker, the president of petitioner, had been engaged in the real estate business in the city of Washington for many years and only after his death on May 14, 1925, did Albert W. Walker become president of petitioner. As early as 1902 Allan E. Walker, under the laws of the District of Columbia, organized Allan E. Walker & Co., which was purely a brokerage company and never dealt in real estate as a principal, all business being a commission business, handling rents, loans, insurance and so forth. Allan E. Walker, however, as an individual, was at that time a speculator in real estate, buying and selling same. About 1917 he organized a company known as the Allan E. Walker Investment Co., which was a company speculating in real estate and handled no brokerage of any kind. The company took over or acquired almost everything in the way of real estate owned by Allan E. Walker.

In 1923 Allan E. Walker organized the petitioner, primarily to buy and accumulate real estate in a particular section which it was thought would later become very valuable, and which was in a section of the city which included the real estate herein involved. As early as 1912 he bought a small tract of ground of about four acres in that section, not for speculation, and the same is still held by his estate.

Other tracts of land were bought in the same section or neighborhood by Allan E. Walker, in connection with others, which tracts were later acquired by the petitioner.

The petitioner acquired in all about 642 acres in the aforesaid section, which lands were being accumulated not for immediate sale, but to be held as an investment, in the carrying out of the ideas of Allan E. Walker that such would prove a good investment as the city developed in that direction, which it has done. The contracts for the acquisition of such lands were made prior to Allan E. Walker's death, though the transfers were not all made until 1925. Most of the lands were contracted for in 1924. Before his death, approximately $350,000 worth of stock of petitioner had been sold for the purchase of the 642 acres. After his death, stock subscriptions in the amount of $150,000 failed to come in, resulting in financial difficulties in closing up contracts for the purchase of the lands and taking care of the very heavy carrying charges. In 1927 the petitioner corporation was so badly in need of funds that it became necessary for it to dispose of some of its property, which it did by exchanging 118 acres of its lands with the W. C. and A. N. Miller Development Co. for the real estate in the vicinity of Twenty-second

Street and Pennsylvania Avenue, NW., on the terms heretofore stated, and the latter property was held for investment until disposed of in 1931, as heretofore indicated. The petitioner has never made any other sale or disposition of any of the 642 acres except a sale for cash of one block of 48 acres, which was again occasioned by the petitioner's necessity for cash.

While the record shows that the petitioner under its charter possessed the power to do any character of real estate business desired, it also shows, in our opinion, that the particular real estate here involved was not acquired and held for immediate or early sale, but was in the nature of a real estate investment to be held as such to await future growth and development of the city of Washington in or towards such property before it would be placed on the market for immediate sale and no longer held as an investment.

The respondent cites and relies on the case of *John M. Welch, Sr.*, 19 B.T.A. 394, and the interpretation therein given of the clause " property held by the taxpayer primarily for sale in the course of his trade or business," as used in section 208 of the Revenue Acts of 1924 and 1926. That is not only a different section from the one here involved, but the facts in that case are quite different from those in the present case. In that case the petitioner was engaged actively in the real estate brokerage business. He was an active member of the Detroit Real Estate Board for approximately 30 years; was listed as a realtor and advertised as engaged for many years in selling property, and his property was being sold and actively offered for sale by a partnership of which he was a member. In the instant case the petitioner, while possessing certain powers under its charter, has never—as indicated by the evidence—exercised certain of them; has never engaged in the real estate brokerage business, or any loan, insurance or collection business, and did not speculate generally in the buying and selling of real estate. The issue here is how the particular property involved in the exchange herein was held by the petitioner. Was it held primarily for sale? If so, it was not excepted from the provisions of section 203 (b) (1), *supra.* The respondent insists that the real estate was petitioner's " stock in trade " and as such was excepted from the provisions of that section. In order to be so excepted, however, it would have to be held, as other property, " primarily for sale " and, in our opinion, the property in question was not—as indicated by the evidence—so held. Furthermore, " stock in trade," in the income tax point of view, is property that may be inventoried, and real estate is not property to be included in the inventory. *Atlantic Coast Realty Co.*, 11 B.T.A. 416; *Albert F. Keeney*, 17 B.T.A. 560; *John M. Welch, Sr., supra.*

The fact that the petitioner operated under a charter which gave it the power to act as a dealer, broker or speculator in real estate, in our opinion, did not prevent it from acquiring and holding real estate " for investment " and not " primarily for sale," although such property may have been acquired with the intention of selling or disposing of the same at some subsequent, though not early, date and would not otherwise have been acquired.

In the instant case, we are of the opinion and hold that the real property involved in the exchange, what was given and what was received, was of like kind and was held " for investment " within the meaning of section 203 (b) (1) and (d) (1) of the 1926 Revenue Act; that the exchange resulted in no taxable gain or income to petitioner in excess of the cash amount of $53,786.90; and that the Commissioner erred in including $71,268.05 in petitioner's taxable income for the year 1927. Cf. *Biscayne Trust Co., Executor*, 18 B.T.A. 1015; *Clinton Gilbert, Jr., Executor*, 20 B.T.A. 765, 771; *Ben L. Carroll*, 21 B.T.A. 724, 728.

*Judgment will be entered for the petitioner.*