ETHEL BLACK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77628.   Filed October 21, 1960.

*William McRae, Esq.*, and *John R. Elliott, Esq.*, for the petitioner.
*Earl Gardner, Esq.*, for the respondent.

## OPINION.

Turner, *Judge:* The question presented is whether upon the disposition by petitioner of her desert property the gain realized to the extent of the fair market value of the residential property received in exchange is not, under section 1031(b) of the Internal Revenue Code of 1954,[1] to be recognized. Respondent has determined that the exchange does not meet the statutory requirements for nonrecognition of the gain in question. Both parties have accepted $7,500 as the fair market value of the residential property received.

In section 1031(a) of the Code,[1] it is provided that "[n]o gain or

---

[1] SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

(b) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—If an exchange would be within the provisions of subsection (a), of section 1035(a), of section 1036(a), or of section 1037(a), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale * * *) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment." If, however, the property received in exchange includes money or property other than property permitted under subsection (a) to be received without recognition of gain, then under subsection (b) the gain is to be recognized to the extent of "the sum of such money and the fair market value of such other property."

According to section 1.1002–1(b) of the Income Tax Regulations, exceptions to the general rule, including the exceptions provided in section 1031 of the Code, "are strictly construed and do not extend either beyond the words or the underlying assumptions and purposes of the exception." According to subsection (c) of that section, "[t]he underlying assumption of these exceptions is that the new property is substantially a continuation of the old investment still unliquidated."

Similar language has been used in regulations extending back to those promulgated under the Revenue Act of 1934.

With respect to the exception provided in section 1031 of the Code, the definition of "like kind" is stated in section 1.1031(a)–1(b) of the Income Tax Regulations, as follows:

As used in section 1031(a), the words "like kind" have reference to the nature or character of the property and not to its grade or quality. One kind or class of property may not, under that section, be exchanged for property of a different kind or class. The fact that any real estate involved is improved or unimproved is not material, for that fact relates only to the grade or quality of the property and not to its kind or class. Unproductive real estate held by one other than a dealer for future use or future realization of the increment in value is held for investment and not primarily for sale.

"Like kind" has been similarly defined in prior regulations, extending back to the Revenue Act of 1924. Regs. 118, sec. 39.112(b)(1)–1; Regs. 111, sec. 29.112(b)(1)–1; Regs. 103, sec. 19.112(b)(1)–1; Regs. 101, art. 112(b)(1)–1; Regs. 94, art. 112(b)(1)–1; Regs. 86, art. 112(b)(1)–1; Regs. 77, art. 572 (sec. 112, 1932 Act); Regs. 69, art. 1572(a) (sec. 203, 1926 Act); Regs. 65, art. 1572(a) (sec. 203, 1924 Act).

That the desert land was held for investment appears to be accepted by both parties, and according to the regulations there is an underlying assumption that residential property received in exchange was substantially a continuation of the old investment still unliquidated. That is not to say, however, that the exceptions are not to be given full force and effect even though they are to be strictly construed and do not extend either beyond the words or the underlying assumptions and purposes of the exceptions. Our inquiry accordingly must be directed to the exceptions, and to whether or not the residential property is covered thereby.

Admittedly, the desert property, the property exchanged, was not property held for productive use, and though at the trial there was some reference to a possible holding of the residential property for rent, the petitioner makes no claim that it was ever so held, but rather, contends that within the meaning of the statute it was property of a like kind to be held for investment.

From a reading of the wording of the exception, it is apparent, we think, that if the exception did cover the property in question it was because it was either stock in trade or other property held primarily for sale. On the facts here, we may pass the stock-in-trade category without any detailed discussion, since it is patent on the record before us that petitioner was not engaged in a business of buying and selling real estate or in any other business during the pertinent period, and thus the residential property acquired could not have been, as to her, stock in trade. We are of the view, however, that on the evidence the property when acquired was "to be held" and was in fact held by petitioner primarily for sale. It was petitioner's testimony that she accepted Carter's offer for her desert property which called for part payment in the residential property because she thought it was the best "deal" she could get. And while on direct testimony she did testify that in acquiring the property she was undecided whether to rent, sell, or just hold it and after acquiring it she had thought of renting it, she later testified on cross-examination that she was at all times attempting to sell the property and when she had finished her painting and other work she placed it in the hands of a real estate agent for sale, the sale being effected very shortly while she was still residing in the house. We are accordingly convinced that petitioner did not acquire the property to be held as an unliquidated continuation of the old property and for investment, but that at all times it was held primarily for sale, and we hold that the gain represented thereby falls within the exception to 1031(a) and must be recognized.

To support her position that the property was not held primarily for sale within the meaning of section 1031(a), petitioner cites and relies on *Loughborough Development Corporation*, 29 B.T.A. 95, and *Atlantic Coast Realty Co.*, 11 B.T.A. 416. Neither case is in point. In the *Atlantic Coast Realty* case, the question was whether a corporation engaged in buying and selling land was entitled to have its income determined by the use of inventories. The question here and the applicable statutory provision are wholly different.

In *Loughborough Development Corporation*, the question was whether gain from the sale of real estate by a corporation which under its charter was authorized to engage in the real estate business was capital gain under the capital gains provisions of the statute or ordinary income, the basis for the latter being that the gain on the real

estate was on the sale of property "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." It was there found on the evidence that the property sold had not been so held, and it was held that it made no difference that the taxpayer was authorized by its charter to engage in the business of buying and selling real estate and that the particular real estate was not brought within the exception to the capital gains statute if in fact the real estate was not held primarily for sale to customers in the ordinary course of the taxpayer's business.

In the instant case, we are dealing with an entirely different statute, namely, section 1031, and as to that section the words "for sale to customers in the ordinary course of" the taxpayer's trade or business are quite conspicuous by their absence. For the exception in section 1031 to apply, there is no requirement that the taxpayer be conducting a trade or business, or that the property in question be held "for sale to customers in the ordinary course of" a trade or business carried on by the taxpayer. There can be no question, we think, that had it been intended that the scope of the exception in section 1031 should be so limited, language comparable to that used in the capital gains provisions, and which was in question in *Loughborough Development Corporation*, would likewise have been used in section 1031. The only requirement for applicability of the exception in 1031 is that the property received in exchange be "held primarily for sale." The record shows that the residence was so held, and we accordingly hold that the nonrecognition-of-gain provisions of that section does not apply.

*Decision will be entered for the respondent.*