BROOKS GRIFFIN AND JOSEPHINE GRIFFIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3487–65.   December 19, 1967.

254

*E. J. Ball*, for the petitioners.
*Robert S. Leigh*, for the respondent.

OPINION

TURNER, *Judge:* Under section 1031(a)[3] no gain or loss is to be recognized if property held for productive use in a taxpayer's trade or business or for investment is exchanged solely for property of a like kind "to be held either for productive use in trade or business or for investment." If, however, in the exchange the property received consists not only of property permitted under section 1031(a) to be received without recognition of gain but also of other property or money, then under section 1031(b)[4] the gain realized by the recipient is to be recognized up to the sum of the money and the fair market value of the "other property."

The decisive question here is whether or not the Missouri farm, one of the properties received by petitioners in exchange for their Howe land, is other property within the meaning of subsection (b) as deter-

---

[3] SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

[4] SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.

(b) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—If an exchange would be within the provisions of subsection (a), of section 1035(a), of section 1036(a), or of section 1037(a), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

mined by the respondent or is property of a like kind to be held for productive use in petitioners' trade or business or for investment within the meaning of subsection (a) as contended by petitioners.

The resolution of that question in our opinion requires very little discussion and there is really no need to go beyond the words of the statute and their plain meaning. When related to the Missouri farm, it and Howe land were of a like kind in that they were farm properties. It is a fact, however, that the Missouri farm was not to be held and could not have been held for productive use in petitioners' trade or business or by them for investment. Prior to the exchange on January 3, 1961, they had a binding contract and obligation with B. A. Craig to sell the property to him for $110,550 no more than 8 days from their acquisition of the land, and the facts show that the sale of the Missouri farmland to Craig was actually made on the same day that they acquired it from Radcliffe. The decision on this issue must be for the respondent. See and compare *Regals Realty Co.* v. *Commissioner*, 127 F. 2d 931, affirming 43 B.T.A. 194, and *Ethel Black*, 35 T.C. 90.

Section 163(a)[5] of the Code provides for the allowance as a deduction of all interest paid or accrued within the taxable year on indebtedness. Section 461(a)[6] provides that the amount of any deduction or credit shall be taken for the taxable year which is the proper year under the method of accounting used in computing taxable income. The parties have stipulated that petitioner kept his books of account and made his income tax returns on the cash basis.

The evidence shows, and we have found as a fact, that the checks covering the interest in question, showing the Northwestern Mutual Life Insurance Co. as payee, were mailed by petitioner to the insurance company in Milwaukee, Wis., on the afternoon of December 31, 1962. It was the testimony of the president of the Merchants & Farmers Bank in West Helena, on which the checks were drawn, that a check mailed from West Helena to Milwaukee would in the ordinary course require approximately 10 days to reach the bank in West Helena for payment. There is no claim or contention that the checks could, under any circumstances, have been in fact delivered to the payee in Milwaukee on the day they were mailed. Stamps on the back of two of the checks indicate that most likely they were deposited or cashed at the First Wisconsin National Bank of Milwaukee on January 3 and that the remaining two were similarly presented a day or two

---

[5] SEC. 163. INTEREST.

(a) GENERAL RULE.—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

[6] SEC. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.

(a) GENERAL RULE.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

thereafter. In any event, two of the checks cleared the bank in West Helena and were charged to the petitioners' account therein on January 9 and the other two on January 10, 1963.

The petitioner contends that the mailing of the checks on December 31 constituted payment of interest on that date within the meaning of the above sections of the Code. He relies on such cases as *Flint* v. *United States*, 237 F. Supp. 551; *Commissioner* v. *Bradley*, 56 F. 2d 728, affirming 19 B.T.A. 49; *Estate of Modie J. Spiegel*, 12 T.C. 524; and *Clark* v. *Commissioner*, 253 F. 2d 745, remanding a Memorandum Opinion of this Court, for the proposition that under the facts herein the placing of the checks in the mail on December 31, 1962, constituted delivery and their subsequent payment in the succeeding year related back to that date for the purpose of the deduction claimed.

Although there are variations in the facts as to the actual physical delivery of the checks and the cashing thereof, in the cases cited they do generally appear to offer some support for petitioners' contention. In one case, *Witt's Estate* v. *Fahs*, 160 F. Supp. 521 (S.D. Fla. 1956), it was held that in such cases delivery of the checks is effected when mailed in a properly addressed envelope.

In the case at hand, however, there is another critical factor which is not present in any of the cited cases. Here, the checks, although properly drawn and mailed to the payee on December 31, 1962, were dated January 1, 1963. It is clear that the bookkeeper-secretary dated these checks January 1, 1963, because that was the date when the interest was payable on certain notes to Northwestern Mutual Life Insurance Co.; that Griffin did not instruct her as to the specific date to be placed on these checks; and that in signing the checks he did not concern himself as to the dates shown on the checks.[7]

A postdated check is not a check immediately payable but is a promise to pay on the date shown. It is not a promise to pay presently and it does not mature until the day of its date, after which it is payable on demand the same as if it had not been issued until that date although it is, as in the case of a promissory note, a negotiable instrument from the time issued. *Commonwealth* v. *Kelinson*, 184 A.

[7] Respondent, on cross-examination, asked petitioner to explain his instructions, given to his bookkeeper, relating to the checks in question (Tr. 24) :

Q. Now, Mr. Griffin, would you tell us again what happened in December 1962 with respect to these checks? Did you tell her to make them out prior to the end of the year and date them January 1, '63, or did you tell her to date them December 1, '62, or did you tell her not to even date them, or what?

A. I didn't mention the date on them. I said, Let's pay them before the end of the year.

Q. She wasn't authorized to sign checks, was she?.

A. No.

Q. And you signed $60,000 worth of checks and didn't notice they were dated January 1, '63?

A. That is correct.

2d 374 (Pa. Super. Ct. 1962) ; see also Uniform Commercial Code, sec. 3–114.[8]

Generally, a bank may be held liable for prematurely paying a post-dated check. *Montano* v. *Springfield Gardens National Bank*, 207 Misc. 840, 140 N.Y.S. 2d 63 (1955). It has been held that if a postdated check is presented in advance of its date the drawee bank, even though it has funds of the drawer on deposit sufficient to pay it, should not make payment, certify the check, or set aside any fund for that purpose. If the bank does pay the check or withhold money for that purpose and, by reason of its action, other checks drawn by the depositor are dishonored, the bank subjects itself to an action for damages at the instance of the depositor. *Smith* v. *Maddox-Rucker Banking Co.*, 8 Ga. App. 288, 68 S.E. 1092 (1910). Although the president of Merchants & Farmers Bank in West Helena was not sure if payment on a post-dated check was prohibited by banking laws, he testified that his bank would normally turn back a postdated check even if it were dated one day after presentment.

A postdated check is essentially a promissory note, and a taxpayer reporting his income on a cash basis is not entitled to deduct as interest paid during the taxable year the amount of a promissory note given in discharge of an interest obligation. The requirement of section 163, *supra*, as to payment is not satisfied by the issuance of a note promising to pay in the future. *Eckert* v. *Burnet*, 283 U.S. 140; *Hart* v. *Commissioner*, 54 F. 2d 848. The postdated checks under review were merely a promise to pay the Northwestern Mutual Life Insurance Co. the amounts specified thereon on or after January 1, 1963, and did not constitute payment of the interest on December 31, 1962. It is obvious that the checks when mailed were subject to a very substantial restriction as to the time of payment, and that under ordinary circumstances the drawee bank would refuse to make payment on them.

In *L. M. Fischer*, 14 T.C. 792, the taxpayer, on the cash basis, received a check in payment of legal services rendered on December 31, 1942. He had agreed verbally with the payor that he would not deposit the check until the first of the year, and therefore it was not deposited for collection until February 10, 1943. Fischer sought to include the payment on the check in his 1942 taxable income, contend-

---

[8] The Uniform Commercial Code, adopted by the State of Arkansas, Jan. 1, 1962, Ark. Stat. Ann. secs. 85–1–101 to 85–9–507, states as follows :

85–3–114. Date—Antedating—Postdating.—(1) The negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated.

(2) Where an instrument is antedated or postdated the time when it is payable is determined by the stated date if the instrument is payable on demand or at a fixed period after date.

(3) Where the instrument or any signature thereon is dated, the date is presumed to be correct.

ing that the payment on the check in February 1943 related back to the time the check was delivered to him. We held that the check was not income to him in 1942, because the oral condition imposed at the time of delivery of the check restricted the time when the proceeds of the check could be collected.

In the instant case there is a stronger factual situation. Here, we are confronted with a restriction on the face of the checks in question imposed at the time the checks were mailed limiting the time when the proceeds of the checks might be collected. Under the circumstances, we cannot say that the interest was deductible by petitioner in 1962 within the intendment of section 163(a), *supra*.

*Decision will be entered for the Respondent.*