Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff brought this action to recover $293,759.50 taxes, penalties, and interest which he alleges the defendant has collected illegally.
Plaintiff filed returns, on a fiscal year basis (ending October 31), for each of the years 1944,1945,1946 and 1947. The Commissioner of Internal Revenue made deficiency assessments using an increase in net worth computation for these same years. He subsequently collected the deficiency together with penalty and interest, and plaintiff in turn filed a timely claim for refund. The following table shows the amounts involved:

*3

During tlie years in question plaintiff received income from his business, which he sold in mid-1945, from returns on his investments, and from dealings in the market. It appears that, on the basis of the available records and information, plaintiff returned his income from known sources correctly. During this same period plaintiff’s net worth, computed on the basis of visible assets, increased by amounts greatly in excess of the income reported by him. The Government contends that this increase is attributable to income from an unknown source. The plaintiff replies that there was no increase, in fact, that his net worth at the beginning of the taxable period in question was much greater than the Government’s computation indicates. The issue in this case is, therefore, essentially a factual one: the origin of the increase in plaintiff’s apparent net worth.
At the outset plaintiff makes a preliminary contention with regard to the Government’s authority to use the net worth method in computing plaintiff’s income. Section 41 of the Internal Revenue Code of 1939 provides:
The net income shall be computed upon the basis of the taxpayer’s annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *
Plaintiff contends that this section means that the Commissioner can use this method only where the taxpayer either kept no books or where the taxpayer’s accounting procedure does not reflect his income. He cites cases which restrict the use of this method to situations where the taxpayer keeps *4 no accounts, or very inadequate or inaccurate accounts, or where the taxpayer is engaged in activities which justify the conclusion that he has unreported income. In most of the cases in which the net worth method has been applied there was either a defect in the books or evidence of outside income-producing activities.
The law allows the Commissioner to use another method if the taxpayer’s method does not clearly reflect income. To determine this question itself involves the computation of income by some alternative method. Another method of accounting may not be used unless one can show by use of that method that the taxpayer’s own method does not clearly state income.
The circumstances in which it may be used are well stated in Lipsitz v. Commissioner, 21 T. C. 917, at 931:
The net worth method is not a system of accounting; it is not a substitute for either the cash or the accrual basis of accounting or any other recognized method of keeping books. When correctly applied to the facts of a particular situation it is merely evidence of income. And when the increase in net worth is greater than that reported on a taxpayer’s returns or is inconsistent with such books or records as are maintained by him, the net worth method is cogent evidence that there is unreported income or that the books and records are inadequate, inaccurate, or false. It is not correct to say that the use of the net worth method is forbidden where the taxpayer presents books from which income can be computed, for the net worth method itself may provide strong evidence that the books are unreliable.
It should be pointed out that the plaintiff here did not keep a complete set of accounts covering all his personal transactions. As far as his known market transactions and interest income were concerned, he submitted only the primary data from which such accounts could be and were constructed. But by his own admission and from his bank records there is evidence of considerable transfers of cash of which he submitted no further records. We think, therefore, that the Commissioner’s use of the net worth method was proper.
Having determined by the use of the net worth method that there was unreported income, the Commissioner assessed *5 taxes upon it. The determination of the Commissioner is •prima facie correct unless arbitrary, capricious, or excessive, and the burden is upon the taxpayer to show that the tax as assessed was not due. Reinecke v. Spalding, 280 U. S. 227; Hague Estate v. Commissioner, 132 F. 2d 775; Hoefle v. Commissioner, 114 F. 2d 713. Where there have been large unexplained bank deposits, the Commissioner’s determination of taxable income is not arbitrary if the surrounding circumstances indicate that they came from income. Hague Estate v. Commissioner, supra. Proof of such bank deposits standing alone does not establish income, but the evidence need not link the bank deposits to an identified income-producing activity. Many other circumstances may create the inference that the deposits represent income. Goe v. Commissioner, 198 F. 2d 851. We believe that the same rule should apply in this case and that the circumstances surrounding the unexplained increase in net worth justify an inference that the increase was due to unreported income.
This case has some strange features. The plaintiff and his parents were a closely knit family. They were energetic, industrious and thrifty, qualities which people admire. If the parents were frugal almost to the point of miserliness, that is at least partially explained by the fact that they were immigrants. It is to their credit that they wanted to make their own way. That they became reasonably well-to-do and wished to become wealthy is creditable rather than otherwise.
They found many advantages in this new land and they made the most of them which is also to their credit.
But they also owed an obligation to the free and fruitful land that had given them the opportunities which they so much desired.
If they were somewhat miserly in their own affairs they were generous with their own son, who naturally inherited many of the qualities of his parents. If they did not worship money they certainly did not despise that commodity, the love of which the ancient prophet referred to as the “root of all evil.”
The plaintiff claims that in the latter part of 1943, he had on hand in cash or “the equivalent of cash, stocks” over *6 $400,000. But for each, of the years 1918 to 1989, plaintiff either filed no income report or a report showing no taxes due. Two deficiency assessments were made in the year 1924, totaling $10.74.
For the year 1940 plaintiff filed a report showing income tax due in the sum of $360.59 (later amended to show an additional $83.51). Subsequently an additional assessment of $237.37 was made for that year.
Plaintiff changed to a fiscal year basis and for the first ten months of 1941 filed a report and paid $308.91. An additional assessment for that period was made in the sum of $2,057.99, which was paid.
In 1942 plaintiff filed his individual income tax disclosing a tax due in the sum of $4,842.54, which was paid. An additional assessment in the sum of $379.08 was levied and paid.
By this time the understating of income seemed to have risen above the level of a practice and reached the dignity of a habit.
Plaintiff’s individual income tax report for the fiscal year ending October 31, 1943, including the Jacobs Furniture Company which was his individually owned business after November 1,1940, showed a tax of $5,686.50 to be due.
In the year 1949, the defendant assessed deficiency taxes for the fiscal years 1944 through 1947 in the aggregate sum of $227,103.10 plus penalties and interest.
If we accept plaintiff’s testimony it seems strange that he had so little income to report during the 25 previous years.
True the plaintiff and his parents evidently had considerable cash on hand on their persons, in the home, and in lock boxes. The plaintiff had access to one of his mother’s lock boxes. Evidently the members of the family trusted each other completely. They could move their money around and between each other like show producers move the sun and the moon around in a theater.
In this case, as in the theater, it is easy to create an illusion when one controls the props and scenery. We recall seeing the original production of the play entitled “Bain.” The showers on the South Sea huts were so realistic that we caught ourselves wondering how all those finely dressed people would be able to get taxis after the show was over. *7 But when we went outside at the end, the drouth was still on. It hadn’t rained for weeks.
The record does not show the detail nor the specific times of the exchange of funds between the members of this family. But when funds are kept in the form that the plaintiff claims, they can be handled in such a way that the Collector has difficulty in determining which shell the coin is under. These circumstances tend to lessen our confidence in the details of plaintiff’s account of what actually transpired.
The facts on the issue of plaintiff’s real net worth at the beginning of the period in question are thus shrouded in uncertainty. Plaintiff claims that he had over $400,000 in cash or its equivalent at that time. The record unfolds a picture of a man who had many dealings in cash and who possessed a large store of cash. But there is a paucity of corroborative detail for the plaintiff’s figure of over $400,000. He could produce no inventory of his hoard nor could he give a breakdown between the constituent elements of his holdings. While it is clear that plaintiff received substantial gifts from his parents, it is also clear that they did not amount to $400,000. It is possible that plaintiff by wise investments received income from those gifts which over the years increased the original gifts to a sum approaching $400,-000. But the fact that plaintiff during most of the period 1918-1943 reported an income so small as to be free from taxation and that a part of the gifts remained uninvested in cash argue against so large an increment in the value of his patrimony.
Reference to the table in finding 15 will show that plaintiff’s net worth increased gradually throughout the period 1943-1947, both by increase of bank deposits and by increase of security holdings. This gradual increase coupled with the plaintiff’s penchant for cash dealings and his vagueness as to the details of his accumulation justified the Commissioner’s inference that the increase in net worth was due to income. As a consequence the burden shifts to the plaintiff to prove that he did not have the income which the Commissioner attributed to him. We find that plaintiff has not met his burden of showing that the increase of his apparent net worth between October 31, 1944, and October 31, 1947, *8 was not due to unreported income, or, to put it another way, that plaintiff’s actual net worth on October 31,1944, exceeded $200,000.
The situation as to the 5-percent penalty is essentially the same. Unlike a fraud penalty, the burden is upon the taxpayer to prove the 5-percent penalty to have been imposed in error. Gibbs & Hudson, Inc. v. Commissioner, 35 B. T. A. 205. Plaintiff’s failure to report his income under the circumstances of this case amounted to negligence or an intentional disregard of rules and regulations. 26 U. S. C. § 293 (a). Avery v. Commissioner, 11 B. T. A. 958.
For the year ending October 31,1944, a different rule must apply. When the Commissioner of Internal Revenue made his assessment for that year the normal 3-year statute of limitations had already expired and the Commissioner was relying on the 5-year statute of limitations applicable in cases where the taxpayer has understated his income by more than 25 percent of the amount on his return. 26 U. S. C. § 275 (c) (1952 ed.). To avail himself of this longer limitation period the Commissioner must assume the burden of proving that the taxpayer has understated his income by more than 25 percent. Moyer v. Commissioner (1952 P-H T. C. Memorandum Decisions, par. 52, 274) ; Ratto v. Commissioner, 20 T. C. 785, 788. The Government has not sustained the burden of proving that the unexplained increase in plaintiff’s apparent net worth in the fiscal year 1944 was due to income in excess of that shown in the taxpayer’s report for that year. In other words, it has not shown that plaintiff’s actual net worth at the beginning of that fiscal year was less than about $200,000. In fact, the testimony of two disinterested witnesses and other circumstances indicate that plaintiff’s net worth as of October 1943 was probably near that amount. Since the Government has not sustained its burden of proof, the 3-year statute of limitations precluded a lawful assessment of that year.
It is evident, therefore, that plaintiff’s cause, to the extent that it failed, has failed for lack of proof. While a thorough record of the furniture business was kept, no records, notes, diaries or memoranda were ever made of the gifts or when plaintiff actually took possession of them. The record does *9 not show that plaintiff’s parents made any report of gifts in their tax reports. The vague testimony as to the time of making, and amount of such gifts, even if accepted as definite proof, falls short of establishing the existence of an amount equal to the $400,000 which plaintiff claimed to possess in cash or equivalent in October 1943. His income tax reports do not show appreciable earnings during that period, certainly not enough to anything like make up the difference. If he made such sums, he did not report them. He should not be heard now to take advantage of any possible delinquencies on his part as a reasonable explanation of his net worth during the taxable years in question.
In addition if large gifts had been made as far back as before the First World War, it seems strange that plaintiff would have kept a considerable part of them in cash without allowing them to produce income. There is nothing to show that he buried his talents, or like Silas Marner just liked to feel and touch the gold.
The Collector of Internal Bevenue has a difficult assignment at best. To permit plaintiff to recover for the years 1945-1941 under the vague uncertain state of the record largely on the unsupported self-serving declaration of the plaintiff would be unfair to the thousands of citizens who pay their taxes, perhaps not joyfully, but without mental reservation or purpose of evasion.
We conclude that plaintiff cannot recover for the fiscal years 1945,1946, and 1947, but is entitled to recover the deficiency, penalty, and interest collected for the fiscal year 1944, that is, $86,097.87, with interest as provided by law.
It is so ordered.
Laramore, Judge; Whitaker, Judge; and Littleton, Judge, concur.