Earl KITE, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.

Mary B. KITE, Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
No. 14936.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1955.

---

Chester Bedell, Joseph M. Glickstein and C. Harris Dittmar, Jacksonville, Fla., for petitioners.

Robert B. Ross, Ellis N. Slack, Howard P. Locke, S. Dee Hanson, Sp. Assts. to Atty. Gen., H. Brian Holland, Asst. Atty. Gen., Daniel A. Taylor, Chief Counsel Int. Rev. Serv., Vernon F. Weekley, Sp. Atty. Int. Rev. Serv., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

These petitions for review of the decisions [1] of the Tax Court, sustaining the respondent's determination of deficiencies, involve income taxes for each of the years ending September 30, 1943, 1944, 1945, and 1946, and additions to the tax for fraud.[2]

Here the petitioners briefly summarizing the ultimate findings [3] and conclusions of the Tax Court, and presenting

1. 12 T.C.M. 954.

2. These are:

| | for the Year ended Sept. 30 | Deficiency | Additions to tax for fraud |
|---|---|---|---|
| Earl Kite | 1943 | $3,054.01 | $1,035.69 |
| | 1944 | 4,276.92 | 1,845.29 |
| | 1945 | 7,496.58 | 3,748.29 |
| | 1946 | 2,891.36 | 1,445.68 |
| Mary B. Kite | 1943 | 3,054.01 | 1,035.69 |
| | 1944 | 3,989.84 | 1,739.25 |
| | 1945 | 7,496.58 | 3,748.29 |
| | 1946 | 2,891.36 | 1,445.68 |

The issues presented are (1) whether the respondent properly determined the net taxable income of the petitioners for each of the taxable years involved on a net worth basis; and (2) whether he carried his burden of showing that the petitioners are liable for the 50 percent additions to the tax for fraud for each of the taxable periods involved.

3. The Tax Court found that petitioners were husband and wife, engaged in several income-producing activities as equal partners; that they operated a retail whiskey business under the name of Kite's Bar, an illegal gambling operation, an apartment house, a riding stable and a fishing boat; that petitioners received income from each of these activities; that the books and records pertaining to the operation of the bar were set up and maintained by certified public accountants and that the books and records pertaining

four questions [4] for our decision, urge upon us that they must be answered in the affirmative.

The respondent, reducing the questions to two,[5] insists that the findings are fully sustained by the record and that

to the other operations were maintained by Mary Kite or the employee in charge of the particular operation.

The Tax Court pointed out that the records reflecting the income from the gambling operations merely showed total figures for each day's activities and did not itemize the receipts and expenditures; that the original memoranda from which the totals were obtained were destroyed; and that although petitioners needed a great deal of cash on hand in the operation of the gambling activities, no record of cash on hand was kept. In addition, the Tax Court found that the records pertaining to the apartments, the riding stables, and the charter boat "were likewise fragmentary and incomplete".

The Tax Court did not point out any omissions of income or errors contained in the books and records in support of the finding that they were "fragmentary and incomplete".

The Tax Court specifically held that, "The large discrepancy between the net income reported and the cost of the assets acquired, plus the living expenses, in our opinion, justified the inference that the records kept did not accurately reflect the true income from such outside activities."

Based upon these findings, the Tax Court held that the respondent properly determined the income of the petitioners by the increase in net worth method.

The Tax Court rejected in its entirety petitioners' testimony in respect to undeposited cash on hand on October 1, 1942, the beginning date of the respondent's net worth computations, labeling such testimony "fantastic and unrealistic", and saying that, "No oral testimony or documentary proof was presented tending to corroborate the testimony of the petitioners as to the existence of this undeposited cash." In addition, the Tax Court said that the failure to file intangible tax returns with the State of Florida "leads to the assumption" that the petitioners did not have undeposited cash on hand at that time.

The Tax Court held that the petitioners had not carried their burden of proving that the amount of $12,783.35 for cash on hand was improperly included in the respondent's computation of net worth for the taxable year ended Sept. 30, 1946.

As to the assessment of the 50% fraud penalties, the Tax Court admitted that the record was devoid of any direct evi-

dence as to any specific item of unreported income but said, "the respondent's computations on a net worth basis * * * disclose a large discrepancy between the income actually reported and the cost of new assets acquired plus personal living expenses," and that "the illegal operations, the consistent concealment of large sums of cash, and the repeated understatement of income lead us to the conclusion that the 50% additions to the tax for fraud should be sustained."

4. As petitioners present them, the questions involved are:

(1) Whether the respondent's application of the increase in net worth and expenditures method of computing income was justified, the petitioners having shown that they kept books and records for each of their income-producing activities, and the respondent having made no attempt to discredit the petitioners' books and records either by introducing evidence of specific omissions or income, or evidence of tampering with the books, or evidence of income sources not covered by the petitioners' books and records.

(2) Whether the Tax Court erred in sustaining the respondent's net worth computation showing no cash in existence at the beginning date, petitioners' testimony that they had $52,000.00 in undeposited cash at that time being uncontradicted, and the fact of petitioners' having a large amount of cash being supported and corroborated by the testimony of disinterested witnesses and other evidence.

(3) Whether the Tax Court erred in sustaining respondent's net worth computation, including a cash asset item as of the closing date, it appearing that inclusion of such cash item was based solely upon an entry made in the taxpayers' books, and the taxpayers' certified public accountant having testified that such entry was erroneous in that it treated an income item as an asset item.

(4) Whether the Tax Court erred in sustaining respondent's assessment of 50% fraud penalties, the record being devoid of any direct evidence as to any specific item of unreported income.

5. (1) Whether the Tax Court properly found and held, under the evidence that, as to each of the years in question, the taxpayers failed to overcome the prima facies of the commissioner's determination of deficiencies.

(2) Whether, upon all the evidence, the Tax Court correctly found that the

there is no basis for holding them in any respect clearly erroneous.

■ Of petitioners' first point, it is sufficient to say that, whatever might have been said in support of it before December 6, 1954, when the Supreme Court decided: Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194; and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186; it is plain, in the light of those cases, that the contention is without merit. For it is settled in them and in the opinion of this court in Dupree v. United States, 5 Cir., 218 F.2d 781, that:

"* * * This contention stems from the erroneous belief that Section 41 of the Internal Revenue Code [26 U.S.C.A. § 41] restricts proof in a criminal case to certain formalized methods unless the Government first proves that the books and records kept by the taxpayer are themselves incorrect.

*   *   *   *   *   *

"A prosecution for income tax evasion is not an effort by the Government to compute income tax at all. It is an effort by the Government to prove that the taxpayer failed to compute it honestly. There is nothing in this Section nor in any other applicable statute that restricts the Government in the method of proving this fact if it exists. * * *" Dupree v. United States, supra.

■ To maintain their second point, that the court erred in rejecting petitioners' testimony, that they had $52,000 in undeposited cash at the beginning date of the net worth computation, petitioners were confronted below, not only with the necessity of overcoming difficulties inherent in the task of inducing the trier to accept as credible the bizarre, indeed, in some aspects fantastic account of the manipulations and the hoarding or

hiding places of this cash, but also with the burden of overcoming the prima facies of the commissioner's determination. If the taxpayers' testimony had required the acceptance of their claim only that, engaged for many years in an illicit, indeed an actively forbidden business where stealth and secrecy were essential to survival, they acquired by stealth and kept by more stealth a considerable accumulation of illgotten gains, the going might not have been so difficult. When, however, as here, the tale is embellished with so many fantastic particulars, evidencing a rashness and recklessness in choosing the custodians and places of custody for this large amount of illegal cash, the demands upon credulity pass all reasonable bounds, and the claim in effect that the Tax Court was compelled, or even ought to have accepted the story, must and will be rejected by us out of hand.

■ Upon its third position, that commissioner and Tax Court erroneously included in the net worth computation for the year ending October, 1946, as a cash asset, a sum of $12,783.35 as gambling cash on hand, we think it clear that petitioners stand in much better case. Indeed we are of the opinion that the uncontradicted testimony in regard to this item completely supports the taxpayer's contention that, instead of being cash on hand in October, 1946, the true explanation of the entry, on which commissioner and Tax Court based their determination, is that it was a debit-cash income from games. This is shown by the testimony of the certified public accountant, by the journal entry 45, through which this figure was first brought into the books, reading "Debit-cash item from games, $12,783.35", by the net income from games, shown on petitioner's tax returns for the year ending September 30, 1946, $12,615.32, and by other evidence in the case which completely rebuts the fiating of the commissioner and of the government witness. Cf. U. S. v. Caserta, 3 Cir., 199 F.2d 905.

commissioner had sustained his burden of proving fraud and that petitioners were

liable in each year for the 50% fraud penalty assessed.

Petitioners' attack upon the item and the taxes for 1946 is sustained, and the determination of the commissioner and the finding of the Tax Court as to this item and this year are, therefore, rejected.

When it comes to taxpayers' fourth and last question, whether the evidence supports the fraud assessments, while it follows from what has been said just above that it does not support such an assessment for the year 1946, as to the other years the matter stands differently. As the Tax Court states in its opinion and as the record shows, with the exception of the $12,000 item above discussed, petitioners agree in the main with respondent's computation as to their net worth at the end of the fiscal year 1946, though they, of course, account for part of it as attributable to the $52,000 cash which petitioners claim to have had on hand at the beginning of the net worth period. We have disapproved the action of commissioner and Tax Court with regard to the $12,000 item, and the position of petitioners, that there was a failure to prove fraud as to the year 1946, is sustained.

With respect to the other years, however, while we agree with petitioners that this case is different from many net worth cases involving gambling operations, in that it is undisputed that the taxpayers have kept some records with respect to them and have returned at least some of the income received therefrom, we cannot agree with them that the decision as to them must be reversed. In view of the undisputed facts as to petitioners' net worth and of the lameness of their explanation as to the $52,000 cash on hand, on which they rely to escape the charge of fraudulently withholding a part of their income, we are unable to say that the Tax Court's findings of fraud as to those years are clearly erroneous.

As to the years 1943, 1944 and 1945, the decision of the Tax Court is affirmed. As to the year 1946, it is reversed and the cause is remanded for further and not inconsistent proceedings.