989 F.2d 692
 20 UCC Rep.Serv.2d 558
 STAFF BUILDERS OF PHILADELPHIA, INC. and SBCH, Inc., a New
Jersey corporation,
v.
Ephraim KOSCHITZKI; Stephen Savitsky; Staff Builders,
Inc., a New York corporation; Staff Builders International,
Inc., a New York corporation; and Tender Loving Care Health
Care Services, Inc., a Delaware corporation,
v.
Raymond FAZIO, Third-party Defendant,
Staff Builders, Inc., a New York corporation; Staff
Builders International & Staff Builders, Inc., a
Delaware corporation, formerly known as
Tender Loving Care Health Care
Services, Inc., Appellants.
 No. 92-1626.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 23, 1993.
Decided March 31, 1993.
 
 Jonathan Zavin (argued), Brian T. Murnane, Elizabeth H. Cohen, Richards & O'Neil, New York City, Charles F. Forer, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, PA, for appellants.
 Russell I. Piccoli (argued), Russell I. Piccoli, Ltd., Phoenix, AZ, for appellees.
 Before HUTCHINSON, NYGAARD, and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal by Staff Builders, Inc., et al. ("defendants") from a final judgment against them in a diversity action commenced by Staff Builders of Philadelphia, Inc. and SBCH, Inc. ("plaintiffs"), owners of a health care franchise.
 
 
 2
 Before trial in the district court, the parties entered into a court-approved settlement agreement pursuant to which the court retained jurisdiction over any matters that might arise in connection with the enforcement of the agreement. The settlement agreement required defendants to pay plaintiffs a total of $1,000,000.00. This was to be paid by an initial payment of $100,000.00 by February 26, 1990, with the balance paid in monthly installments of $25,000.00. Interest on the outstanding principal was 11%. The settlement agreement provided that defendants could prepay the outstanding balance including interest and receive a 5% reduction on the unpaid principal amount. In addition, and of critical importance here, the agreement required that if defendants refinanced their corporate debt at any time prior to repaying the full amount due under the settlement agreement, an additional $250,000.00 would be added to the outstanding principal.
 
 
 3
 On the afternoon of February 6, 1992, defendants hand-delivered to plaintiffs a check dated February 7, 1992. This check allegedly represented the balance due under the then-outstanding settlement agreement, including interest, less a reduction of 5% for prepayment. Plaintiffs did not then cash the check.[1]
 
 
 4
 On February 13, 1992, defendants' attorney received a notice from plaintiffs that defendants had failed to make the monthly payment due on February 1, 1992. Defendants apparently responded by notifying plaintiffs and the escrow agent that the check delivered on February 6, 1992, and dated February 7, 1992, constituted full payment on February 7th of their obligations pursuant to the terms of the settlement agreement.[2]
 
 
 5
 Thereafter, plaintiffs filed a document in the original action captioned "Application for Entry of Judgment." They sought thereby to collect the additional $250,000.00 provided for by the settlement agreement because either: (1) defendants refinanced their corporate debt prior to the date of their check, February 7, 1992; or (2) the February 7, 1992, check did not constitute payment on that date because it could not have been honored prior to February 10, 1992, the date on which defendants allege that they refinanced their debt. Plaintiffs further sought to collect an additional $100,000.00 under the default provisions of the settlement agreement because of defendants' failure to make the required monthly payment.
 
 
 6
 The parties submitted memoranda to the district court. One was defendants' "Brief in Opposition to Plaintiffs' Application for Entry of Judgment." It asserted that: (1) plaintiffs' application was procedurally defective; (2) plaintiffs were not entitled to summary relief; and (3) there were factual issues that precluded judgment for plaintiffs. The district court referred the matter to a magistrate judge for a report and recommendation. Thereafter, additional memoranda were filed.
 
 
 7
 On May 1, 1992, the magistrate judge issued his report and recommendation. He determined that:
 
 
 8
 1. Defendants' argument that plaintiffs' application should not have been treated as a motion for summary judgment lacked merit.
 
 
 9
 2. The legal dispute involved was governed by Pennsylvania law.
 
 
 10
 3. Whether defendants actually entered into a refinancing agreement prior to the date of the check could not be decided on summary judgment but that the issue was immaterial in view of Conclusion 4.
 
 
 11
 4. Payment by the post-dated check did not take place until the date it was honored by the bank, a date that could not possibly have been prior to the date defendants say the refinancing took place.
 
 
 12
 The magistrate judge's report recommended to the district court that summary judgment be entered for plaintiffs on the basis of conclusion 4. Defendants filed objections to the report which, inter alia, raised the same objections now being considered on appeal. On July 14, 1992, the district court approved and adopted the report by order without discussion. Its final judgment against defendants was in the sum of $393,571.64 plus interest. This timely appeal followed.
 
 
 13
 We exercise plenary review over the district court's grant of summary judgment. American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co., 949 F.2d 690, 692 (3d Cir.1991). Our review of the district court's determination of state law is also plenary. Compagnie des Bauxites de Guinee v. Insurance Co. of North Am., 724 F.2d 369, 372 (3d Cir.1983).
 
 DATE OF EFFECTIVE PAYMENT BY POST-DATED CHECK
 
 14
 The principal issue on this appeal is whether defendants' delivery of a post-dated check to plaintiffs constituted "payment" to plaintiffs on the date of the check. The district court said it did not while defendants say that it did. The resolution of that issue is admittedly controlled by Pennsylvania law.
 
 
 15
 Pennsylvania has adopted the Uniform Commercial Code ("UCC"). Under Section 3802(a) of the Pennsylvania Commercial Code, which parallels Section 3-802(1)(a) of the UCC, the general rule is that when a creditor accepts a check, "the obligation is suspended pro tanto" until the check is honored by the bank. 13 Pa.Cons.Stat.Ann. § 3802(a) (Purdon 1984). Thus, "[w]hen [the] check is paid, the payment of the underlying debt becomes absolute and it is deemed paid as of the date of the giving of the check." 6 R. Anderson, Uniform Commercial Code § 3-802:19 (1984). As this Court said in Clark v. Commissioner, 253 F.2d 745, 748 (3d Cir.1958), "[i]t does not matter that the check was not cashed or deposited or the drawer's account charged until the following year. The check is regarded as payment on a condition subsequent, and if the condition of honor on presentment is met the payment is regarded as absolute from the time the check was delivered."
 
 
 16
 In a case analogous to ours, the Supreme Court of Pennsylvania considered whether a plaintiff had made "payment" as required under a mortgage redemption statute. See Douglass v. Grace Bldg. Co., 477 Pa. 289, 383 A.2d 937, 940-41 (1978). The court stated the issue as follows: "[D]id appellants' tender ... of an uncertified personal check constitute 'payment ' ... under the statute?" Id. 383 A.2d at 939 (emphasis in original). The superior court, relying on much earlier precedent, concluded that payment was not made on the date of the check. In reversing, the supreme court stated: "We believe ... that the [superior] court's reliance on these Nineteenth Century cases is misplaced, because those cases did not take into account the realities of modern-day banking procedures." Id. 383 A.2d at 940. The supreme court then quoted favorably the following language from an opinion of this Court:
 
 
 17
 [The] common use of the term "payment" in both laymen's language and lawyers' language explains it as "something given to discharge a debt or obligation." ... A taxpayer makes out his return form; he accompanies it with a check for the amount he figures he owes. If that is not the sending of money in discharge of the debt it is hard to figure out what a "payment" can be.
 
 
 18
 Id. (emphasis omitted) (quoting Hill v. United States, 263 F.2d 885, 886 (3d Cir.1959) (quoting Busser v. United States, 130 F.2d 537, 539 (3d Cir.1942))).
 
 
 19
 The Supreme Court of Pennsylvania went on in Douglass to conclude that the tender of the check satisfied the statute's requirement of "payment" by a certain date. Id. Understandably, the court recognized that discharge, which it referred to as "absolute payment," would not be complete until the check was honored. Id. 383 A.2d at 941; accord 6 R. Anderson, Uniform Commercial Code § 3-802:19 (1984).
 
 
 20
 We read these authorities to establish that a debt is paid on the date on the check and that when later honored the debt is deemed to have been discharged as of the date of the check. Plaintiffs contend that such is not the rule when a post-dated check is delivered. Contrary to plaintiffs' contention, a post-dated check "is generally held to be payable ... at any time on or after the day of its date.... [I]t has on its face ... implied assurance that there will be such funds on the day it becomes due." Commonwealth v. Kelinson, 184 A.2d 374, 376-77 (Pa.Super.Ct.1962); see Henry J. Bailey, Brady on Bankchecks p 2.10, at 2-16 (6th ed. 1987) ("A postdated check is payable on or after the day of its date, being in effect the same as if it had not been issued until that date."); James V. Vergari & Virginia V. Shue, Checks, Payments and Electronic Banking 274 (1986) ("The postdated check ... is payable on the stated date."). We emphasize that we are here concerned with the date on the face of the check, not its delivery date. Thus, after a post-dated check is delivered, it constitutes payment only on and after the date of the check. We perceive no valid basis for making a distinction in our situation.
 
 
 21
 We conclude that the Supreme Court of Pennsylvania would hold, absent special qualifying language in the controlling instrument, that a delivered post-dated check constitutes payment on the date it bears. Thus, payment of defendants' debt was made on February 7, 1992.
 
 
 22
 In reaching his conclusion to the contrary, the magistrate judge relied in part on Barnhill v. Johnson, --- U.S. ----, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), where the Court held that for purposes of applying 11 U.S.C. § 547(b) of the Bankruptcy Act, a transfer made by check is deemed to occur on the date of honor. We believe the magistrate judge's reliance on Barnhill was misplaced. The Barnhill decision is limited to the interpretation and application of Section 547(b) and consequently is of no real significance in interpreting the Pennsylvania commercial law governing payment by use of a post-dated check. The magistrate judge's reliance on In re Sharon Steel Corp., 111 B.R. 534 (W.D.Pa.1990) and In re New York City Shoes, Inc., 880 F.2d 679 (3d Cir.1989) is similarly misplaced.
 
 
 23
 The magistrate judge also relied on First Pennsylvania Bank, N.A. v. Triestar, 251 Pa.Super. 372, 380 A.2d 826 (1977), in reaching his conclusion that "payment, the discharge of a debt or obligation, does not occur by negotiable instrument until that instrument is paid." In reaching this conclusion, the magistrate judge confused the related, but distinct, concepts of "payment" and "discharge." "Payment" on a check that is not post-dated is effective as of the date the check is delivered. See Douglass v. Grace Bldg. Co., 477 Pa. 289, 383 A.2d 937, 940-41 (1978) (applying Pennsylvania law; relying on federal cases for guidance). Payment on a post-dated check is effective on the date it bears. Whether the debt is "discharged" depends upon whether "the check is either paid or dishonored." Id. 383 A.2d at 941; see First Pa. Bank, 380 A.2d at 830 ("[T]he obligor is not discharged ... until the ... instrument itself is paid."). Thus, the authorities cited by the magistrate judge do not support his conclusion.
 
 
 24
 The magistrate judge erred and the district court confirmed the error in concluding that under Pennsylvania law payment of the post-dated check did not occur until the date of honor.[3] Payment took place on the date of the check. It follows that the district court erred in granting summary judgment based on the magistrate judge's erroneous recommendation. This recommendation was premised on his holding that defendants had not made payment on February 7, 1992. Despite the trial court's erroneous legal conclusion as to the date of payment, the parties agree that the issue as to the date of refinancing, which the magistrate judge found immaterial, must now be decided after development of an appropriate record.
 
 
 25
 The judgment of the district court will be reversed and the case remanded so that, after appropriate proceedings, findings on the refinancing issue can be made and an appropriate judgment entered.[4]
 
 
 
 [1]
 Plaintiffs cashed defendants' check after the district court's July 14, 1992 order deciding this case for plaintiffs
 
 
 [2]
 The settlement agreement provided that upon notification of an alleged default defendants could either: (1) cure the alleged default; or (2) notify the escrow agent that payment had been made or that it was not due
 
 
 [3]
 Our resolution of this issue makes it unnecessary to determine whether or not defendants were given adequate notice that plaintiffs' application would be treated as a motion for summary judgment. Nor need we address defendants' contention that the magistrate judge erred in determining that the check could not have been honored prior to February 11, 1992
 
 
 [4]
 If, after remand, the district court determines that refinancing occurred prior to February 7, 1992, thus triggering the $250,000.00 payment requirement, it will then be for the district court to decide what consequences, if any, such a finding will have on the monthly payment default issue given our conclusion that the payment on February 7th was effective. If reliance is to be placed on the magistrate judge's questionable statement to the effect that the defendants gave no notice to the escrow agent, and that issue is material, we conclude that it must be reviewed again in light of our opinion